NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0635n.06
Filed: August 24, 2006

No. 05-5649

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LYNDON PROPERTY INSURANCE COMPANY, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| BERNARD KATZ, as Liquidating Supervisor for Wallace's Bookstores, Inc., and HARGETT CORPORATION, | ) ) ) ) | |
| Appellees. | ) ) ) | |

Before: MOORE and GIBBONS, Circuit Judges; and SHADUR, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Appellant Lyndon Property Insurance Co. ("Lyndon") appeals two orders of the bankruptcy court issued in connection with the bankruptcy proceedings of Wallace's Bookstores, Inc. ("Wallace's"). The first order approved a settlement between the debtor Wallace's and a creditor. The second order denied Lyndon's motion to intervene in the adversary proceeding that the creditor had previously filed against Wallace's. For the following reasons, we affirm the bankruptcy court's orders.

---

[*]The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

1

I.

Wallace's Bookstores contracted with Eastern Kentucky University ("EKU") to operate EKU's campus bookstore. The EKU-Wallace's contract required Wallace's to spend $750,000 to construct improvements to the EKU bookstore (the "capital improvements" or "fixtures"). The contract also provided that, if Wallace's ceased to operate the bookstore before the term had expired, then EKU or a successor operator would reimburse Wallace's for the unamortized value of the capital improvements. The EKU-Wallace's contract required Wallace's to obtain a surety bond to secure its obligation under the contract. Lyndon supplied this bond.

Wallace's then entered into a contract with Hargett Corporation ("Hargett") to perform the construction work at the EKU bookstore. Although Hargett undertook the construction project, Wallace's failed to pay Hargett for the work performed. On February 27, 2001, Hargett filed liens in the amount owed by Wallace's; these liens were served on Wallace's and EKU.

Wallace's filed bankruptcy proceedings on February 28, 2001. After Wallace's bankruptcy filing, Hargett filed a proof of claim for the unpaid balance of the work done, which was determined to be $161,703.13. On April 25, 2001, the bankruptcy court approved the sale of the EKU bookstore fixtures to Barnes & Noble ("B & N"). The proceeds from the sale (the "B & N sale proceeds") were remitted to the debtor-in-possession lender, subject to Hargett's liens to the extent those liens were determined to be valid. In other words, the B & N sale proceeds were deposited in escrow until the validity of Hargett's claim could be determined. Hargett then commenced an adversary proceeding against Wallace's, on August 7, 2001, in order to obtain payment from the B & N sale proceeds for the construction work it had done. Wallace's and Hargett filed cross-motions for summary judgment in September 2001. Before the bankruptcy court had ruled on the motions for

2

summary judgment, Wallace's and Hargett reached a settlement. The settlement, which was presented to the court on December 17, 2001, called for payment to Hargett from the B & N sale proceeds in the amount of $80,851.57.

Lyndon filed an objection to the settlement. Lyndon objected to the proposed settlement on the grounds that it had a superior right to the B & N sale proceeds than Hargett. Specifically, Lyndon claimed that, by the terms of the surety bond, the B & N sale proceeds were to be held in trust for Lyndon. The sale proceeds, according to Lyndon, could be applied by Lyndon as setoffs against any obligation that Wallace's (and now Lyndon) owed to EKU. In its request for relief, Lyndon requested that the motion to approve settlement be denied. Lyndon also requested that it be permitted to intervene in the adversary proceeding and for a declaration of rights.

The bankruptcy court approved the settlement, overruling Lyndon's objection, on December 27, 2001. Lyndon appealed the approval of settlement. On March 10, 2003, the district court reversed the bankruptcy court's approval of settlement, finding that "facts necessary to resolve the issues raised by the parties remain in dispute." The district court reasoned that, in order to object to the settlement on appeal, Lyndon, which was not a party to the adversary proceeding, needed to show that it was aggrieved by the order approving settlement. To be "aggrieved," Lyndon would have to establish that it had an interest in the B & N sale proceeds which were to be used to fund the settlement. The district court therefore remanded for a determination of the merits of Lyndon's claim that it was entitled under the performance bond to the B & N sale proceeds. Moreover, without a prior determination of the validity of Lyndon's claim to the B & N sale proceeds, the district court concluded that the settlement could not be considered to have been deemed fair and equitable.

3

There was no relevant activity in the underlying adversary proceeding until, on January 5, 2004, the bankruptcy court ordered the parties to file a joint notice of settlement or to set the matter for trial. On January 16, 2004, Lyndon filed a motion to intervene, asserting a superior interest in the B & N sale proceeds. On January 26, 2004, Bernard Katz, who was then acting as liquidating supervisor for Wallace's, and Hargett filed a new motion for approved settlement. Wallace's/Katz also objected to Lyndon's motion to intervene. In its objection to Lyndon's motion to intervene, Wallace's/Katz argued that the motion was both procedurally deficient and substantively unsupported. Lyndon responded to Wallace's/Katz's objection to its motion to intervene; attempting to correct any procedural deficiencies of its motion in this response.

Lyndon then filed an objection to the motion for approval of settlement. In response, Wallace's/Katz and Hargett then modified the settlement, providing that the payment of settlement to Hargett would be made from the general funds of the estate rather than from the B & N sale proceeds. Wallace's/Katz and Hargett then filed a new motion for approval of settlement based on this new agreement on March 17, 2004. The bankruptcy court approved this settlement by order dated April 21, 2004. After acknowledging that Wallace's/Katz and Hargett had agreed that the payment to Hargett would be made from the general funds of the estate rather than the B & N sale proceeds in which Lyndon claimed a superior interest, the bankruptcy court concluded that it no longer needed to consider Lyndon's interests in determining if the settlement was "fair and equitable." The bankruptcy court then ruled on Lyndon's motion to intervene, denying the motion as procedurally defective, untimely, and without merit.

Lyndon appealed the bankruptcy court's orders approving settlement and denying Lyndon's motion to intervene in the adversary proceeding. The district court affirmed the bankruptcy court's

orders. The district court held that Lyndon had no standing to object to the approved settlement because it had no interest in the B & N sale proceeds. The district court also affirmed the bankruptcy court's denial of the motion to intervene, holding that Lyndon's motion was untimely, intervention would cause prejudice to the parties, and Lyndon failed to demonstrate that it was entitled to intervene. Lyndon appeals to this court.

## II.

On appeal, Lyndon challenges: (1) the bankruptcy court's approval of the amended settlement; (2) its denial of Lyndon's motion to intervene; and (3) the failure of the parties or the court to join it as a necessary party to the litigation. When this court considers an appeal taken from the district court's final order in a bankruptcy case, the court independently reviews the bankruptcy court's decision. *In re Kennedy*, 249 F.3d 576, 579 (6th Cir. 2001). This court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Id.* The bankruptcy court's approval of a settlement is reviewed for an abuse of discretion. *See In re Monus*, 63 F. App'x 215, 216 (6th Cir. 2003); *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002). This court reviews the bankruptcy court's ruling on intervention as of right *de novo*, except for the timeliness requirement which this court reviews for an abuse of discretion. *United States v. Detroit Intern. Bridge Co.*, 7 F.3d 497, 499 (6th Cir. 1993).

Lyndon first argues that the bankruptcy court abused its discretion by approving the settlement which, as amended, conditioned payment to Hargett out of the estate's general funds. In order to appeal a bankruptcy court's order, however, a litigant must qualify as a "person aggrieved" by the order. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990). In order to constitute a "person aggrieved," the appellant must demonstrate that

5

the order "diminishes [his] property, increases his burdens, or impairs his rights." *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996). These requirements are designed to "limit[] standing to persons with a financial stake in the bankruptcy court's order." *Id.*

The question of whether a party is a "person aggrieved" for purposes of appellate standing in bankruptcy is usually a question of fact for the district court. *See Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 423 (6th Cir. 1 998); *Fidelity Bank, Nat'l Ass'n*, 77 F.3d at 882. In this case, we find no error in the district court's conclusion that Lyndon was not a person aggrieved. Although Lyndon claims an interest in the B & N sale proceeds, the bankruptcy court's approval of settlement did not disturb the B & N sale proceeds. Lyndon does not claim that it has a superior interest in the general estate funds that would preclude approval of a settlement that drew upon those funds. Thus, Lyndon cannot claim that it was aggrieved by the settlement because the settlement did not affect the only property in which Lyndon claims an interest – the B & N sale proceeds.[1]

Moreover, even if Lyndon did have standing to appeal the order approving settlement, the bankruptcy court did not abuse its discretion by approving the settlement. Under the bankruptcy rules, a trustee of an estate – here, Katz – has the authority to seek a compromise or settlement of claims available to the debtor, upon motion and after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a). In order to approve the settlement, the bankruptcy court must determine that the compromise is "fair and equitable." *See In re Bard*, 49 F. App'x at 530. In making this

---

[1]Although Lyndon implies that the bankruptcy court acted purposefully to deny Lyndon an interest in the settlement so that Lyndon would no longer have an interest on which to base its right to be heard on the issue, Lyndon's characterization neglects to consider that Wallace's/Katz and Hargett amended the settlement to draw on general estate funds rather than the B & N sale proceeds. The bankruptcy court merely approved the settlement.

determination, the bankruptcy court should consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929), and collecting cases). Because Lyndon asserts no interest in the general estate funds, there is no basis on which to find that the settlement, which drew on those general funds, failed to meet the standard for approval.

Lyndon next argues that the bankruptcy court erred by denying its motion to intervene in the adversary proceeding, which was based on intervention by right. The bankruptcy court denied Lyndon's motion to intervene as of right on three grounds: first, Lyndon's motion failed to state the grounds for intervention; second, the motion was untimely; and third, even assuming that the motion adequately stated grounds for intervention and was timely, Lyndon failed to establish that he had a right to intervene.

We turn first to the bankruptcy court's determination that Lyndon's motion failed to state the grounds for intervention. Fed. R. Bankr. P. 7024 makes Fed. R. Civ. P. 24 applicable to adversary proceedings. Rule 24(c) provides that "[a] person desiring to intervene shall serve a motion to intervene upon the parties . . . . The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Rule 24(a) requires a party seeking to intervene by right to establish four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate

7

representation of that interest by parties already before the court." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The bankruptcy court found that Lyndon's motion only addressed the second required element of mandatory intervention under Rule 24(a) – the showing of a legal interest in the case. Under Fed. R. Civ. P. 7, made applicable to the adversary proceeding by Fed. R. Bankr. P. 7007, a motion to the court for an order must "state with particularity the grounds therefor. . . ." Fed. R. Civ. P. 7(b)(1). Having reviewed Lyndon's motion and the attached documents, we agree with the bankruptcy court that Lyndon failed to address the third and fourth elements of mandatory intervention. A "proposed intervenor must prove each of the four factors" and "failure to meet one of the criteria will require that the motion to intervene be denied." *Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 973 F.2d 1311, 1317 (6th Cir. 1992). Accordingly, the bankruptcy court properly denied Lyndon's motion to intervene.

Even if Lyndon's motion sufficiently raised each of the required elements, the bankruptcy court determined that Lyndon's motion was untimely. The bankruptcy court's determination of untimeliness is reviewed for an abuse of discretion. *See Detroit Intern. Bridge Co.*, 7 F.3d at 499. To determine whether an application for intervention as of right meets the timeliness requirements of Fed. R. Civ. P. 24(a), we consider:

> (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case.

*Linton by Arnold*, 973 F.2d at 1317. Hargett initiated its adversary proceeding on August 7, 2001. Lyndon moved to interevene on January 16, 2004. The bankruptcy court found that Lyndon had actual knowledge of the litigation at least as early as November 2001; indeed, Lyndon filed its own

8

objection to the first settlement in December 2001. By the time Lyndon moved to intervene, there had been cross-motions for summary judgment, an approved settlement, a reversal, and a remand. Moreover, because Lyndon's intervention in January 2004 would have destroyed the settlement, the prejudice to the parties is obvious.

Lyndon's prompt objection to the first proposed settlement and its initial success on appeal do not change our analysis regarding the timeliness of its motion to intervene. Although Lyndon's original objection to settlement requested intervention as relief, it was plainly not a motion to intervene. After that objection was overruled, Lyndon successfully appealed the approval of the settlement. During the pendency of the appeal (January 2002 until March 2003), the bankruptcy court's jurisdiction in the matter was conceded to the district court; therefore, we do not consider that time period as reflecting any delay on Lyndon's part. Nevertheless, the district court's involvement cannot explain why Lyndon did not move to intervene in the adversary proceeding originally, instead of merely objecting to the settlement. Nor does the pendency of the appeal explain why Lyndon did not move to intervene from March 2003 until January 2004. Although Lyndon argues that the parties did nothing to further the case during this time period, this does not excuse Lyndon's failure to intervene. Finally, Lyndon argues that its delay in attempting to at intervene was justifiable in light of the fact that it was litigating a related case that could have resolved the issue of the B & N proceeds without resort to the Hargett litigation. Although Lyndon's effort to minimize unnecessary litigation would be appropriate in some contexts, in this instance, Lyndon was required to pursue its basis for recovery on multiple fronts. The district court did not abuse its discretion by concluding that Lyndon's motion to intervene was untimely.

Finally, Lyndon argues that it was a necessary party, under Fed. R. Civ. P. 19, from the time the adversary proceeding was filed. Rule 19 provides, in relevant part,

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Fed. R. Civ. P. 19. Lyndon argues that because Hargett's claim against Wallace's involved the B & N sale proceeds, it was a necessary party from the outset. This argument is somewhat odd in light of the fact that Lyndon moved to intervene, under Fed. R. Civ. P. 24, and the denial of its motion is now before this court on appeal. As this court has observed, "Rule 24 is the implement of the absentee, as the absentee can petition for intervention without any involvement by the defendant when the absentee stands to have its interests harmed." *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 670 n.13 (6th Cir. 2004). Given that neither party nor the bankruptcy court invoked joinder under Rule 19, and the court properly ruled on Lyndon's Rule 24 motion, Lyndon's Rule 19 objection on appeal is subsumed by the bankruptcy court's denial of intervention. If the bankruptcy court properly concluded that Lyndon lacked a sufficient legal interest in the action to intervene, it follows that Lyndon was not a necessary party under Rule 19. Furthermore, to the extent that Lyndon's invocation of Rule 19 is an effort to excuse the deficiencies of its Rule 24 motion, we reject this argument. Finally, notwithstanding the merits of whether Lyndon had a sufficient legal interest in Hargett's adversary proceeding at the time that Hargett initiated the proceeding, the

10

settlement of Hargett's claim with Wallace's/Katz without use of the B & N sale proceeds effectively terminated any claim of interest that Lyndon might have had in the proceedings.

### III.

For the foregoing reasons, we affirm the bankruptcy court's orders.