In re Robert Norbert NOVAK and Jenifer Joan Novak, Debtors.

No. HM 07–90133.

United States Bankruptcy Court, W.D. Michigan.

March 11, 2008.

Daniel M. Morley, Esq., Traverse City, MI, for the Chapter 7 Trustee.

Donald W. Bays, Esq., Marquette, MI, for Debtors.

### OPINION RE: TRUSTEE'S OCTOBER 12, 2007 MOTION

JEFFREY R. HUGHES, Bankruptcy Judge.

Colleen Olson ("Trustee") requests that I reconsider my October 4, 2007 order concerning her "Motion to Approve Stipulation Regarding Claim." I am denying that request for the reasons slated on the record at the November 13, 2007 hearing and as also set forth in this opinion.

### BACKGROUND

Trustee's original motion references a lawsuit arising from injuries that Robert and Jenifer Novak ("Debtors") sustained while driving in Illinois. Debtors were permitted a $200 Section 522(d)(5)[1] exemption in the lawsuit notwithstanding Trustee's objection. Nonetheless, the law-

---

1. 11 U.S.C. § 522(d)(5). Unless otherwise designated, all further references to "Section ____," shall be to the Bankruptcy Code. 11 U.S.C. §§ 101, *et seq.*

suit has remained properly of the estate because Debtors scheduled its value as "unknown." [2]

The stipulation attached to Trustee's original motion is between Trustee and Debtors. It provides in pertinent part that the lawsuit is now to be "the Debtors' property, and may be pursued by the Debtors without participation from the Trustee." ¶ 6, Stipulation. However, it further provides that Trustee is to receive 40% of any net recovery and that Debtors will not claim that portion of the recovery as exempt.

The original motion offered the following reasons why the stipulation should be approved:

7. Because the Debtors will benefit as well as the bankruptcy estate, the Trustee believes that the Stipulation provides an incentive for the Debtors to continue to pursue the Claim and maximize its value.

8. The Stipulation reduces costs to the bankruptcy estate by eliminating the necessity of the Trustee being a party to the litigation.

9. The Trustee believes that the Stipulation is in the best interests of the bankruptcy estate.

August 15, 2007 Motion [Dkt. No. 28].

Trustee served the motion upon all creditors and other parties in interest pursuant to Local Bankruptcy Rule 9013.[3] Trustee also filed with the court an affidavit that the deadlines had passed without any objection being made. *Id.* Consequently, Trustee requested that an order enter approving the stipulation.

**2.** *See,* Order Re: Trustee's June 21, 2007 Objections to Exemptions [Dkt. No. 21].

**3.** LBR 9013 provides that orders may enter without an actual hearing if notice is given to

I offered this explanation for denying the motion:

Approval of the settlement is not given pursuant to Fed.R.Bankr.P. 9019(a) for the reason that sufficient information has not been given to creditors and other parties in interest to grant the approval requested. Specifically, Trustee's motion fails to set forth Trustee's best estimate of the amount (or range of amounts) that Trustee would be awarded if she were to successfully prosecute this matter to judgment. This information is necessary so that creditors and other parties in interest may have the opportunity to compare this amount with the amount that Trustee has agreed to accept in settlement.

October 4, 2007 Order [Dkt. No. 32].

Denial of the motion, however, was without prejudice. Moreover, the order provided that denial did not impair Trustee's authority to otherwise settle the referenced matter on behalf of the bankruptcy estate, citing in support my decision in *In re Dalen,* 259 B.R. 586, 593–604 (Bankr. W.D.Mich.2001).

### DISCUSSION

A. *Court Oversight of Trustees*

Courts under the former Bankruptcy Act were closely involved in the administration of cases.

Bankruptcy judges administer the present bankruptcy system [under the Bankruptcy Act], and are responsible for the administration of individual bankruptcy cases. Their administrative, supervisory, and clerical functions in these matters are in addition to their judicial

all necessary parties and no objection to the requested relief is made within the required time. *See also,* 11 U.S.C. § 102(1).

duties in bankruptcy cases, The situation is in marked contrast to most litigation, in which the parties themselves manage the progress of the case. The judge does not become involved in the case, and if a party fails to take action, the judge does not intercede on his behalf. Instead, the party is foreclosed.

\* \* \*

The bankruptcy judges have stepped in to perform the supervisory role because of the dearth of creditor participation.

\* \* \*

The Bankruptcy Act provides for the default of creditor control by vesting the creditors' normal functions in the bankruptcy judge when the creditors do not exercise them. The bankruptcy judge is required to appoint a trustee in liquidation cases when creditors do not elect one. The bankruptcy judge supervises the trustee in the performance of his duties, often suggesting causes of action that the trustee might pursue to recover assets for the estate. **The bankruptcy judge reviews nearly all transactions that trustees enter into, and rules, usually ex parte, on their propriety. The bankruptcy judge frequently entertains requests for instructions from trustees for even the most routine matters.**

H.R.Rep. No. 95–595, pp. 88–89, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6049–53 (emphasis added).

However, Congress concluded in 1978 that the court's day-to-day supervision of bankruptcy cases had seriously compromised its ability to impartially resolve the disputes that also arose during the administration of a case.

There usually develops a close working relationship between the judge and "his" trustee, due to the necessity for frequent ex parte contacts between the judge and the trustee in the administration of the case. It is not uncommon to see a trustee enter a courtroom, for a hearing on a matter, from the judge's chambers, followed closely by the judge himself. As often as not, the trustee was working with the judge on a different matter than the one up for hearing. Nevertheless, the combined force of all of these factors seriously compromises the appearance of the bankruptcy judge as an impartial arbiter. They have worked to generate deep suspicion on the part of attorneys who practice in the bankruptcy court as to the fairness of the decisions of the bankruptcy court.

\* \* \*

The law must be changed to afford bankruptcy litigants the fair and impartial justice to which all other litigants in the federal courts are entitled.

*Id.* at 89–91.

Consequently, when Congress enacted the Bankruptcy Code, it significantly reduced the court's supervisory role. Granted, Congress did require continued court intervention with respect to certain activities. *See, e.g.,* 11 U.S.C. § 363(b) (sales not in the ordinary course of business),[4] 11 U.S.C. § 364 (post-petition credit other than trade credit) and 11 U.S.C. § 365

---

**4.** Actually, Section 363(b) requires only that there be "notice and a hearing" before the trustee may sell estate property outside the ordinary course. Section 102(1), in turn, allows for the hearing to be waived if there is no request for a hearing within the time pro-scribed by the notice. Consequently, sales of estate property outside of the ordinary course may also be consummated under the Bankruptcy Code without actual court intervention provided no objection is made.

(assumption and rejection of leases). However, for the most part Congress expected trustees under the Bankruptcy Code to divorce themselves from the bankruptcy judges and to instead rely upon the legislation itself for their authority to act on behalf of the estate. *See, e.g.,* 11 U.S.C. § 704.

Unfortunately, the fact that court involvement in a bankruptcy case is now limited to a few discrete areas has not deterred trustees and other parties from continuing to seek the comfort of a court order for any number of other agreements, activities and decisions related to the case. The challenge for courts today is to winnow the legitimate requests from the rest. The motion in this instance is a case in point. While Trustee certainly wants me to approve the agreement she has reached with Debtors, she is circumspect as to the authority for doing so. Neither the stipulation nor the supporting motion refers to a code section or a rule. Indeed, it is unclear as to exactly what activity Trustee wants reviewed. All that Trustee in fact asks the court to do is to "approve" the stipulation.

Section 363(b) and Rule 9019(a) [5] are the two most likely fits, if you will, for Trustee's motion. Section 363(b) is a candidate since it appears that Debtors will end up with 60% of an asset that had become the bankruptcy estate's property at the outset of their case, 11 U.S.C. § 541(a)(1), and that continued to be the estate's property notwithstanding Debtors* allowed $200.00 exemption in the same. However, the stipulation itself does not suggest that

Trustee is actually contemplating a sale of that interest to Debtors. For example, it does not appear that Debtors are to give to the bankruptcy estate anything of value in exchange for the majority share of what could be a very sizable recovery.

It is also tempting to simply refuse approval on the basis that the stipulation does not represent a Rule 9019(a) settlement either. However, the stipulation does include some indicia of a settlement. For example, Debtors' agreement to waive any exemption rights to the 40% portion of the recovery that Trustee is to keep implies that there is in fact an underlying dispute regarding the additional exemptability of the lawsuit.[6] Consequently, I have approached Trustee's motion as if it is a request under Rule 9019(a) to approve the apparent settlement of this implicit dispute.

B. *Court Approval Of Trustee Settlements*

Rule 9019(a) is simple enough.

> On motion by the trustee and after notice and a hearing, the court may approve a settlement.

However, like the jitterbug, there is more to this rule than meets the eye.

Some courts have declared without explanation that all settlements involving the bankruptcy estate must be approved. *See, e.g., In re Leslie Fay Companies,* 168 B.R. 294, 305 (Bankr.S.D.N.Y.1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order."); *In re Pugh,* 167 B.R. 251, 253–54 (Bankr.M.D.Fla.1994) ("[The compromise]

---

**5.** Unless otherwise indicated, all further citations in this opinion to "Rule____" will be to the Federal Rules of Bankruptcy Procedure.

**6.** Debtors' current Schedule C claims only the $200 Section 522(d)(5) exemption in the lawsuit already allowed. However, it appears that Mr. and Mrs. Novak each may be able to

amend their Schedule C to also exempt whatever amount is recoverable for lost future earnings, 11 U.S.C. § 522(d)(ll)(E), and up to $20,200 of whatever is recoverable on account of personal bodily injuries. 11 U.S.C. § 522(d)(11)(D).

could not have become a binding contract unless the Trustee complied with FRBP 9019...."); *In re Rothwell,* 159 B.R. 374, 379 (Bankr.D.Mass.1993) ("A settlement agreement is unenforceable without notice of the settlement to creditors or a court order approving it"). *See also, In re Masters,* 149 B.R. 289, 291–92 (E.D.N.Y.1992); *OptInRealBig.com, LLC,* 345 B.R. 277, 291 (Bankr.D.Colo.2006). The Sixth Circuit has also suggested the same in dictum.

> In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable.

*Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 473 (6th Cir.1988) (citations omitted).[7]

Settlements, though, are part and parcel of a bankruptcy proceeding. "[I]t is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." *Myers v. Martin (In re Martin).* 91 F.3d 389, 393 (3rd Cir.1996). Compro-

mises concerning proofs of claims, property of the estate, and claimed exemptions are also common place. Consequently, it is fair to ask whether Rule 9019(a) in fact mandates court approval given Congress' expressed desire to remove the courts from the administration of bankruptcy cases.

As already noted, specific sections of the Bankruptcy Code provide for continued court involvement in such trustee activities as the sale of estate assets and the assumption or rejection of executory contracts. However, the Bankruptcy Code is silent with respect to trustee settlements. In contrast, the former Bankruptcy Act included a specific provision:

> § 27. Compromises. The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.

11 U.S.C. § 50 (repealed 1978).[8]

Congress' decision not to incorporate former Section 27 into the Bankruptcy

---

**7.** *Reynolds* involved the collection of a tax. The Sixth Circuit concluded that the IRS was judicially estopped from taking an inconsistent position with Ms. Reynolds' husband regarding the taxability of a capital gain after having reached a court approved settlement in Ms. Reynolds' own Chapter 11 case regarding the same issue. There is no question that the bankruptcy court's approval of the settlement with Ms. Reynolds was critical to the panel's decision. However, its declaration that Rule 9019(a) requires court approval of settlements is gratuitous. The panel could have arrived at the same conclusion had it instead treated the bankruptcy court's approval of the settlement as something that Ms. Reynolds had simply chosen to seek in connection with her Chapter 11 proceeding.

*Bauer v. Commerce Union Bank, Clarksville, Tennessee,* 859 F.2d 438 (6th Cir.1988) is another reported Sixth Circuit decision that discusses court approval of settlements in a bankruptcy proceeding. However, the discussion in *Bauer* is also dictum because the

issue in that case was whether the district court had improperly substituted the debtors' trustee for themselves in a separate diversity action that the debtors had commenced against their bank. Indeed, the panel did not decide even this issue since the panel ultimately concluded that it lacked jurisdiction to hear the appeal on an interlocutory basis.

**8.** The Bankruptcy Act was enacted in 1898. Section 27 itself was derived from two general orders previously issued by the Supreme Court to regulate the administration of bankruptcy cases. General Order No. 28, which was entitled "Redemption of Property and Compounding of Claims," stated in part that:

> Whenever it may be deemed for the benefit of an estate ... to compound and settle any debts or other claims due or belonging to the estate, the receiver or trustee ... may file his petition therefor; and thereupon the court shall appoint a suitable time and place for the hearing thereof, notice of which shall be given

Code certainly suggests that the approval of settlements is not to be among those activities under the Code where court intervention is still required. The inference instead is that the trustee can now resolve disputes on his own.[9]

Judge Wedoff reached a similar conclusion in *Telesphere Communications*.

> The requirement for court approval of settlements has an uncertain basis. There is a substantial body of authority holding that a bankruptcy judge "must apprise himself of all facts necessary to evaluate [a] settlement and make an 'informed and independent judgment' about the settlement" *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987), citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424, 434, 88 S.Ct. 1157, 1163, 1168, 20 L.Ed.2d 1 (1968), and *In re A & C Properties*, 784 F.2d 1377, 1383 (9th Cir.), *cert. denied, Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). These authorities, however, appear to be grounded in pre-Code decisions which reflect the encompassing administrative role of the bankruptcy court under the Bankruptcy Act of 1898. *TMT Trailer Ferry*, for example, is a pre-Code decision stating that it is essential for "every important determination in reorganization proceedings" to receive the independent judgment of the bankruptcy court. 390 U.S. at 424, 88 S.Ct. at 1163,
>
> The Code itself rejects this view of the role of the bankruptcy court; indeed, one of the express purposes of the Code was to remove the bankruptcy judge from general estate administration, giving that task to the newly created office of United States Trustee. The House Report on the legislation that became the Bankruptcy Code states that the Code provides for a "separation of judicial and administrative functions currently performed by the bankruptcy judges," with the judges acting as "passive arbiters of disputes that arise in bankruptcy cases" and the United States trustees assuming "the bankruptcy judge's current supervisory roles." H.R.Rep. No. 595, 95th Cong., 1st Sess. 107 (1977), U.S.Code Cong. & Admin.News 1978,5787, 6069.
>
> Consistent with this legislative purpose, the Bankruptcy Code contains no requirement for judicial approval of settlements.

*In re Telesphere Communications, Inc.*, 179 B.R. 544, 551 (Bankr.N.D.Ill.1994).

Of course, trustee settlements are still addressed by Rule 9019(a). However, Rule 9019(a) is only procedural. *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 283 (6th Cir.1986). *Bostick Foundry* in-

---

as the court shall direct, so that all creditors and other persons interested may appear and show cause, if any they have, why an order should not be passed by the court upon the petition authorizing or directing such an act on the part of the receiver or trustee ... General Order No. 33, which was entitled "Arbitration and Compromise," in turn, directed that:

Whenever a receiver, trustee or debtor in possession shall make application to the court ... for authority to compromise any such controversy, the application shall clearly and distinctly set forth the subject matter of the controversy, and the reasons why it is proper

and for the best interest of the estate that the controversy should be settled by ... compromise.

9. A settlement, though, may still be subject to court scrutiny if it includes provisions that trigger other sections of the Bankruptcy Code. For example, a settlement in which the debtor agrees to pay the estate for the non-exempt portion of disputed property claimed as exempt is in effect a sale of estate property. Consequently, a Section 363(b) motion would likely be required.

volved a Chapter 11 proceeding. The question posed was whether the debtor, as debtor-in-possession, could repudiate a post-petition settlement that it had placed on the record in a separate district court action. The debtor argued that the settlement was unenforceable, and therefore subject to repudiation, because the bankruptcy court had never approved it pursuant to Rule 9019(a). *Id.*

The Sixth Circuit disagreed. It observed that the district court had jurisdiction over the disputed matter when the debtor commenced its Chapter 11 proceeding and that it had been proper for the district court to then accept the parties' post-petition settlement of their dispute once the automatic stay had been lifted. Although the Sixth Circuit certainly acknowledged the procedural importance of Rule 9019(a), it concluded that the rule did not negate the ability of the district court "to proceed with all phases of the litigation properly before it, including a disposition by trial or settlement." *Id.*[10] In other words, the Sixth Circuit was satisfied that the debtor-in-possession's appearance before the district court and its attendant consent to the settlement that had then been placed on the record was enough to bind it and the bankruptcy estate to whatever agreement had been reached. Rule 9019(a) approval was unnecessary.[11]

Other courts also agree that Rule 9019(a) does not mandate court approval of settlements.

One of the rules of bankruptcy procedure, Fed.R.Bankr.P. 9019(a), provides a procedure for motions to settle, but it cannot create a substantive requirement for court approval that does not exist in the Code itself.

*Telesphere Communications,* 179 B.R. at 551–52. *See also, Northview Motors, Inc. v. Chrysler Motors Corp.,* 186 F.3d 346, 351 n. 4 (3rd Cir.1999); *Myers v. Martin (In re Martin),* 91 F.3d 389, 394 n. 2 (3rd Cir.1996).

In addition, the use of "may" in the rule as opposed to "shall" creates ambiguity at the very least, especially in light of *Telesphere* and Congress' express decision to remove the court from case administration. And finally, if Rule 9019(a) approval is in fact necessary, then literally every compromise the trustee might reach, from the largest to the most insignificant, would be subject to court review. In contrast, consider Section 363 and its exception for sales made in the ordinary course of business. 11 U.S.C. § 363(c). It certainly stands to reason that the drafters would have incorporated a similar exception into Rule 9019(a) if they actually intended Rule 9019(a) approval to be mandatory. Indeed, interpreting Rule 9019(a) as requiring approval without some type of ordinary course exception could easily lead to the incongruous situation of a trustee being empowered to independently sell under

---

**10.** Although *Bostick* is a split decision, Judge Wellford, in his dissent, was quite clear that he agreed with the rest of the panel on this point. He based his dissent instead upon his belief that the parties had also agreed, albeit tacitly, that the settlement would not become enforceable until the bankruptcy court had approved it as well. *Id.* at 285.

**11.** Interestingly, the Sixth Circuit, in an unpublished opinion, later declared that a debtor-in-possession's oral agreement to compro-

mise was not enforceable because it had not been approved by the bankruptcy court. *Gold v. General Motors Corp. (In re Signet Industries, Inc.),* 165 F.3d 28 (Table), 1998 WL 639168, *3 (6th Cir.1998). However, the *Signet* panel did not offer any authority for its conclusion other than Rule 9019(a) itself. The panel also failed to explain why it was not bound by *Bostick Foundry. See,* 6th Civ.R. 206(c) (Reported panel opinions are binding on subsequent panels).

Section 363(c) a very expensive item of inventory yet having to run back to court to approve the settlement of even the most inconsequential of warranty claims arising from the very same sale.[12]

■ However, Rule 9019(a) still serves a purpose if it is interpreted instead as being only discretionary. Compromises are favored in bankruptcy because they minimize litigation and expedite the administration of a bankruptcy estate. *Martin*, 91 F.3d at 393 (quoting from 9 Collier on Bankruptcy, ¶ 9019.03[1] (15th ed.1993)). Compromise, though, has its own risks, for the trustee's decision to settle might later be criticized when the trustee applies for his fees or a claim is made against his bond. The prospect of being second-guessed by a disgruntled creditor at some later date could easily dissuade a trustee from accepting what might otherwise appear to be a favorable settlement, especially when the issues involved are complex and the stakes are high. It is certainly reasonable, then, to interpret Rule 9019(a) as simply a device to further encourage trustees to "minimize litigation and expedite the administration

of a bankruptcy estate." *Id.* In a sense, Rule 9019(a) is itself a compromise. On the one hand, Rule 9019(a) promotes settlement over protracted litigation by giving the trustee a means beforehand to assess whether the decision he has made is controversial. On the other hand, the omission of any mandate to seek such approval ensures that the bankruptcy court will not unduly interfere with the myriad of other compromises the trustee might reach where he would prefer to proceed without court sanction.[13]

Whether Rule 9019(a) approval is mandatory or only discretionary is an important question, for, as *Dalen* illustrates, the answer has a profound effect upon how a court is to evaluate the settlement proposed. *Dalen* involved the resolution of a dispute between the trustee and a secured creditor. What had been agreed upon was clearly reasonable based upon the information available to the *Dalen* trustee and his own assessment of the costs and risks involved in proceeding further with that dispute. However, the *Dalen* trustee had delayed having me review the proposed settlement under Rule 9019(a) until I was

---

**12.** I recognize that subparts (b) and (c) of Rule 9019 use the word "authorize" and that consequently there is at least then the argument that "approve" in subpart (a) means "authorize" as well. However, the fact remains that the drafters of Rule 9019 chose "may approve" over "may authorize" in addressing the activity covered by subsection (a). In addition, *Telesphere, Martin* and *Northview* all hold that a trustee's authority to act on behalf of the estate cannot be conditioned upon court approval unless the Bankruptcy Code itself imposes that restriction. Therefore, if subsection (a) of Rule 9019, which does not have a counterpart under the Bankruptcy Code, is to have any meaning at all, "may approve" must be interpreted as permitting the court's intervention only when the trustee chooses. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) ("It is an elementary rule of construction that 'the act

cannot be held to destroy itself.' " (citation omitted)).

**13.** Whether a trustee chooses to secure Rule 9019(a) approval of a settlement is ultimately a test of the trustee's confidence in his own decision making. Settlements relating to relatively insignificant or uncomplicated matters may not warrant the expense or delay associated with Rule 9019(a) approval. On the other hand, a trustee would presumably want the additional assurance provided by that rule whenever the settlement in question involved a substantial discount or complicated issues. However, such approval could end up being costly to the trustee, for if the settlement is opposed, then the question arises as to whether the bankruptcy estate should bear the expense of further contesting the objection given that it is only the trustee who personally stands to gain from any such endeavor.

literally ready to decide an issue that was critical to the dispute's outcome. Moreover, my decision favored the trustee. Consequently, it was equally clear to me that the bankruptcy estate stood more to gain if I rejected the settlement and compelled the trustee to proceed.

My dilemma caused me to reflect upon Rule 9019(a) approvals within the broader context of the Bankruptcy Code and its objectives. I would have been comfortable with including the additional information that only I had in assessing the settlement proposed had I concluded that Rule 9019(a) approval was a pre-requisite. In other words, if the trustee's authority to enter into a settlement is also to depend upon the court's agreeing with that decision, then whatever information the court itself may have concerning the merits of the dispute should also be relevant. However, if as I and *Bostick Foundry* have concluded, a trustee is not required to seek Rule 9019(a) approval of a settlement in order for it to be enforceable, then what purpose is to be served when the trustee does choose to request such approval? Or, put differently, if a trustee, in attending to the administration of the bankruptcy case, has the inherent authority to enter into binding settlements with third parties just as he has the inherent authority to enter into binding contracts to make ordinary course sales, why would he ever bother to seek approval of a settlement under Rule 9019(a)?

■ The only plausible answer is comfort.[14] A trustee chooses to seek Rule 9019(a) approval even though approval is not required because it offers him the invaluable opportunity to procure the court's assurance that his decision to settle will not be second-guessed at some later dale by a disgruntled creditor objecting to his fees or making a claim against his bond.[15] However, if that is Rule 9019(a)'s purpose, then it follows that the court should not be using the trustee's request as an opportunity to impose its own judgment as to what is best for the estate. Indeed, to permit such interference would run counter to Congress' effort to give trustees more independence concerning the estate's administration. Rather, the court's focus should be on whether the trustee, as the representative of the estate,

14. I assume, of course, that the beneficiary of Rule 9019(a) is to be the trustee. After all, the rule is quite clear that the trustee, and only the trustee, is empowered to seek the desired relief. Nonetheless, it is fair to at least consider the possibility that the rule is to benefit the settlement's other party. That is, the actual purpose of Rule 9019(a) is to give the other party further assurance that the trustee in fact has the authority to bind the estate to the settlement reached. However, if that is the case, then it follows that any such order could be issued perfunctorily, for, as already explained, such an order would simply confirm the authority to settle already granted to the trustee by the Bankruptcy Code itself. Indeed, there would be no need at all for the court to even consider the merits of the settlement vis-a-vis the bankruptcy estate and its trustee. "Approve," though, as used in Rule 9019(a), suggests that the court is to do more regarding the settlement than just confirm what should already be self-evident. Therefore, it is unlikely that Rule 9019(a) was intended to benefit a party other than the trustee himself.

15. The question can also be posed this way: How will the trustee later use the Rule 9019(a) order he has chosen to procure? The order would, of course, be useful to validate the trustee's authority to enter into the settlement should that ever become an issue. However, its real value lies in the estoppel it would provide should a creditor later attempt to use the settlement as a reason to contest the trustee's fees or to surcharge him, for not only would that creditor have had an opportunity to be heard before the order's entry, but also the court itself would have favorably evaluated the decision to settle as part of the process preceding its issuance.

is making a responsible decision based upon the information available to him, for clearly that would be the focus if the trustee's decision to settle were later challenged in conjunction with a claim against his bond.

A trustee in bankruptcy may be liable for violations of his fiduciary duties. A trustee in bankruptcy can be liable in his official capacity or individually. A bankruptcy trustee is liable in his official capacity for acts of negligence. The applicable standard is the exercise of due care, diligence and skill both as to affirmative and negative duties. The measure of care, diligence and skill required of a trustee is that of "an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view." Mistakes in judgment cannot be the basis of a trustee's liability in his official capacity. The failure to meet the standard of care, however, subjects the trustee to liability in his official capacity.

*Ford Motor Credit Company v. Weaver,* 680 F.2d 451, 461–62 (6th Cir.1982) (citations omitted).

■ Generally, a bankruptcy trustee's fiduciary responsibilities are no different than those owed by any other fiduciary. He has the duty to be obedient (*i.e.,* the obligation to not act outside the fiduciary's permitted authority), the duty of loyalty (*i.e.,* the obligation not to act in the fiduciary's own interests), and the duty of care (*i.e.,* the obligation not to act negligently). *Dalen,* 259 B.R. at 610. Consequently, it stands to reason that the same standards should be applied in assessing a trustee's proposed settlement in the context of a Rule 9019(a) motion.[16]

---

**16.** The courts in *Telesphere* and *Northview* have interpreted Rule 9019(a) differently. In their view:

> [t]here is no difference in the effect on the estate between the sale of a claim (by way of assignment) to a third party and a settlement of the claim with the adverse party.

*Telesphere,* 179 B.R. at 552 n. 7; *see also, Northview,* 186 F.3d at 350. Consequently, these courts would subject all settlements outside the ordinary course to the notice and hearing requirement of Section 363(b). As for Rule 9019(a), they treat it as merely supplementing Section 363(b).

I agree that the Bankruptcy Code may still require court review of a settlement involving the estate even though the trustee is indifferent as to whether approval is given under Rule 9019(a). For example, settlements in which the debtor agrees to pay the estate for the non-exempt value of disputed property claimed as exempt is in effect a sale of property subject to Section 363(b). Indeed, contrary to *Telesphere's* suggestion, Section 363(b) is not the only Code section that might become relevant, for *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), does in fact require the court to test any settlement in a Chapter 11 proceeding against the absolute priority requirements of Section 1129(b) if the settlement affects the relative rights of creditors. *See also, In re Dalen,* 259 B.R. at 599–601.

However, I see no reason for concluding that Rule 9019(a) cannot still be used at the trustee's discretion in instances where Section 363(b) or another section of the Bankruptcy Code does not otherwise require court intervention. To begin, I disagree with *Telesphere* and *Northview* that a settlement of a cause of action held by the estate is the same as a sale of that action. There is no question that a cause of action may be sold, or, more accurately, assigned, to a third party. However, an assignment is seldom coupled with the resolution of the dispute itself. Rather, the decision to settle or litigate is simply transferred to the assignee.

Second, limiting court involvement in trustee settlements to only Section 363(b) sales considerably narrows the universe of settlements that may be approved. As *Telesphere* itself points out, settlements do not always involve causes of action that are property of the estate. 179 B.R. at 552 n. 6. For example, trustees also settle disputes involving claims against the estate. In fact, it is questionable whether the court in *Telesphere* had the authority under Section 363(b) to evaluate the settlements before it since those settlements

I have offered this further explanation of *Dalen* because a Sixth Circuit bankruptcy appellate panel recently rejected it as an "erroneous legal standard." *Olson v. Anderson (In re Anderson)*, 377 B.R. 865, 868 (6th Cir.BAP2007).[17] The *Anderson* panel instead championed "fair and equitable" as the appropriate standard. This standard, it declared, derives from a supposedly unassailable "directive" given by the Supreme Court some 40 years ago in the case of *TMT Trailer Ferry:*

> [T]he Supreme Court, in discussing the importance of settlements in bankruptcy cases, stated:
>
> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation, (citation omitted).

*Anderson*, 377 B.R. at 872 (quoting from *Protective Comm. for Indep. Stockholders*

---

apparently involved only avoidance actions. Section 363(b) is quite specific; it applies to only those situations where the trustee intends to sell, use, or lease property of the estate. Avoidance actions, though, are not property of the estate; rather, what becomes property of the estate is only that which the trustee actually recovers as the consequence of a successful avoidance action, 11 U.S.C. §§ 541(a)(3) and (a)(4). Therefore, it seems that the *Telesphere* court should have simply declined to consider the debtor-in-possession's motion to approve if in fact it believed that a trustee has no ability outside of Section 363(b) itself to seek approval of a settlement.

Third, *Telesphere* and *Northview* forget that the former Bankruptcy Act addressed settlements in one section (former Section 27) and sales of estate assets in another section (former Section 70f). What these courts have in effect concluded is that Congress, in enacting the Bankruptcy Code, intended to combine within the scope of Section 363(b) not only the same "sales-type" activities that had traditionally been covered under former Section 70f but also another activity that had been traditionally addressed by an entirely different provision of the former Act. One would certainly think that there would be at least something in the legislative history to support this conclusion, especially given that *Telesphere* and *Northview* rely upon an analogy to make their reasoning work in the first place.

And finally, the suggested insignificance of Rule 9019(a) does raise the question of why it remains as a rule. After all, Section 363 is already complemented by Rule 6004. What more, then, is added by Rule 9019(a)'s seemingly obvious declaration that "[o]n motion by the trustee and after notice of a hearing, the court may approve a compromise or settlement?" Or why is there a separate notice requirement for court approval of settlements under Rule 2002(a)(3) if settlements are already subject as "sales" to the notice requirements of Rule 2002(a)(2)?

I recognize, of course, that *Bostick Foundry* described Rule 9019(a) as governing only procedure and that *Telesphere* and *Northview* both hold that Rule 9019(a) cannot create a substantive right not otherwise found in the Bankruptcy Code. However, I see no inconsistency with my interpretation of Rule 9019(a), for creditors and other parties in interest clearly have the right apart from Rule 9019(a) to challenge the soundness of a trustee's decision to settle in the context of either the allowance of his fees or a claim against his bond. Rule 9019(a), then, is simply a procedural mechanism to allow the trustee to accelerate that determination to an earlier date.

17. My colleague recently joined the *Anderson* panel in its rejection of *Dalen. In re Cormier*, 382 B.R. 377 (Bankr.W.D.Mich.2008). However, his criticism is the same as the panel's. Therefore, no separate discussion is necessary.

*of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)).

*TMT Trailer Ferry,* though, is a Bankruptcy Act case. Consequently, at least some consideration should be given to the fact that court involvement in the settlement process was much different in 1968 than it is now. It is certainly possible to interpret *TMT Trailer Ferry* as requiring a bankruptcy judge under Section 27 of the former Act to independently assess the fairness of a trustee's settlement. However, as already discussed, the Bankruptcy Code completely overhauled the judiciary's role in the administration of a bankruptcy case. *See, e.g., Telesphere Communications,* 179 B.R. at 551. The trustee now decides on his own whether a dispute is to be settled and what the terms are to be. If judicial review is needed today, it is only because the trustee himself has chosen to seek Rule 9019(a) approval of the compromise already made.

Moreover, *TMT Trailer Ferry* did not actually involve the approval of a settlement under former Section 27. Rather, that case, as the *Anderson* panel concedes, "concerned the absolute priority rule." *Id.* Specifically, the question addressed by the Court in *TMT Trailer Ferry* was whether the settlements the debtor had reached with certain creditors and then incorporated into Chapter X plans complied with the "absolute priority" requirement imposed by former Section 174 upon the confirmation of those plans:

> After a hearing ... the judge shall enter an order approving the plan or plans which **in his opinion** comply with the provisions of Section 216 of his Act, and which are **fair and equitable,** and feasible.

(emphasis added).[18]

Consequently, the *Anderson* panel stretches to characterize the Court's comments in *TMT Trailer Ferry* as even a binding "directive" for settlements reached under the former Bankruptcy Act.[19]

The *Anderson* panel's interpretation of Sixth Circuit case law is equally subject to question. First, the panel itself acknowledges that the two published opinions it relies upon, *Reynolds* and *Bauer,*[20] are not in fact bankruptcy cases. *Anderson,* 377 B.R. at 872. Second, the panel makes no attempt to integrate into its reasoning *Bostick Foundry's* determination that Rule 9019(a) approval of a settlement is not mandatory. And finally, the three unpublished opinions that the panel cites, *Lyn-*

---

18. Although the Bankruptcy Code does not have a counterpart for former Section 27, the absolute priority rule is still part of the confirmation process for what are now referred to as Chapter 11 plans.

   Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is **fair and equitable,** with respect to each class of claims or interests that is impaired under, and has not accepted, the plan,

   11 U.S.C. § 1129(b)(1) (emphasis added).

19. The *Anderson* panel further observed that "the vast majority of appellate courts" have relied upon *TMT Trailer Ferry's* fair and equitable standard or similar criterion in addressing the approval of settlements under Rule 9019(a). *Anderson,* 377 B.R. at 871. However, none of the many cases it then identifies offers its own analysis for the conclusion reached; each simply defers to *TMT Trailer Ferry* or its progeny. Therefore, while the additional authority relied upon may be voluminous, it is in the end as unpersuasive as *TMT Trailer Ferry* itself for the proposition the *Anderson* panel makes.

20. *See,* n. 7, supra.

*don Prop. Ins. Co. v. Katz,*[21] *Bard v. Sicherman (In re Bard),*[22] and *In re Fishell,*[23] represent only the opinions of the authoring panels. *See,* 6th Civ.R. 206(c) (Only reported cases are binding on subsequent panels). Indeed, other issues were actually dispositive in *Fishell* and *Katz.* Consequently, nothing would preclude a future Sixth Circuit panel from still giving some thoughtful consideration to how court approval of settlements has changed since the enactment of the Bankruptcy Code.

Put simply, the orthodoxy that the *Anderson* panel insists upon is not justified.[24] Nor is *Dalen* the heresy the panel makes it out to be. *Dalen* does not reject either the "fair and equitable" standard of *TMT Trailer Ferry* or the various checklists that courts have since developed to give meaning to that amorphous phrase.[25] All that it does is recognize that these so-called standards must be considered within the broader context of whether the settlement proposed is consistent with the exercise of the trustee's duties. In other words, *TMT Trailer Ferry* and its progeny represent nothing more than different expressions of how a court is to now go about assessing whether the trustee has properly exercised the duty of care owed by him as a fiduciary should he elect under the Bankruptcy Code and its rules to have the court review a settlement he is proposing. If *Dalen* is radical, it is only because it recognizes that the trustee's duties of obedience and loyalty must also be assessed whenever the trustee is seeking Rule 9019(a) relief.

Indeed, it is difficult to understand the *Anderson* panel's decision without also accepting the *Dalen* approach. The settlement that the trustee had reached in that case contemplated the trustee receiving $13,560 from the defendants in a Section 363(h) action in exchange for the trustee's conveying to the defendants the estate's purported interest in the subject property. Unfortunately, it was very likely that the debtor's prior effort to exempt that interest had left the trustee with nothing to

---

21. 196 Fed.Appx. 383 (6th Cir.2006).

22. 49 Fed.Appx. 528 (6th Cir.2002).

23. 47 F.3d 1168, 1995 WL 66622 (6th Cir. 1995).

24. It is also not binding. *National Sign & Signal v. Livingston (In re Livingston),* 379 B.R. 711, 727–28 (Bankr.W.D.Mich.2007).

25. Courts frequently have cited the four factors enumerated in *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929):

(1) the probability of success in the litigation;
(2) the difficulties of collecting any litigated judgments;
(3) the complexity of the litigation and the expense, inconvenience and delay necessarily attending it; and
(4) the interests of the creditors and interest holders of the estate.

*See, e.g., In re Jackson Brewing Co.,* 624 F.2d 605, 607 (5th Cir.1980); *In re W.T. Grant Co.,* 4 B.R. 53, 69 (Bankr.S.D.N.Y.1980); *In re Meyer,* 105 B.R. 920, 923–927 (Bankr.D.Minn. 1989).

Other courts have cited the expanded list of seven factors set forth in *In re Texaco, Inc.,* 84 B.R. 893, 902 (Bankr.S.D.N.Y.1988):

(1) the probability of success in litigation in comparison to the present and future benefits offered by the settlement.
(2) the prospect of complex and protracted litigation if the settlement is not approved;
(3) the degree to which the settlement is supported by parties in interest;
(4) the competency and experience of counsel who support the settlement;
(5) the relative benefits to be received by members of any affected class;
(6) the nature and breadth of releases to be obtained by officers and directors; and
(7) the extent to which settlement is the product of arms length bargaining.

*In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 758 (Bankr.S.D.N.Y.1992); *In re Dow Corning Corp.,* 192 B.R. 415, 421–22 (Bankr.E.D.Mich.1996).

convey. Consequently, it appeared to me and apparently to the *Anderson* panel as well that the approval of what the trustee was proposing would be tantamount to condoning a fraud, albeit unintentional. As the panel itself put it, "the BAP cannot sanction a settlement that purports to convey that interest." *Anderson*, 377 B.R. at 873.

The panel's declaration does beg the question "why?" If, as the panel insisted, *TMT Trailer Ferry's* "directive" is for courts to simply weigh the economics of the settlement proposed, then approval, not rejection, was in order. After all, the trustee was presenting a settlement that she at least believed would generate cash for the estate under circumstances where further pursuit of her lawsuit would likely produce nothing.

■ What the *Anderson* panel recognized implicitly, though, was that there is more to the approval of trustee settlements than financial gain; that a trustee is also obligated to stay within the law with respect to whatever agreement has been reached. The reason, then, why the panel balked at the settlement trustee proposed is that the trustee was in effect asking the court to sanction behavior that on its face appeared to be unlawful. Or, to put it in the terms of *Dalen*, the *Anderson* panel could not approve the settlement because it contemplated the trustee conducting herself in a manner that was inconsistent with her duty of obedience.

■ In summary, it is possible, but not inevitable, that an approach different than the one I set out in *Dalen* would be appropriate if in fact Rule 9019(a) required that all bankruptcy settlements be approved. If, however, as I have concluded, approval under Rule 9019(a) is to be left to the trustee's discretion, then logic leads to the further conclusion that the issue the trustee is presenting whenever Rule 9019(a) relief is sought is whether his decision is consistent with what is expected of him as a fiduciary of the bankruptcy estate. Consequently, I remain convinced that the appropriate standard against which to measure Trustee's apparent Rule 9019(a) motion in this instance is the one expressed in *Dalen*.

## C. *Application of the Dalen Standard.*

■ As already discussed, the stipulation that Trustee and Debtors executed suggests a settlement. However, while Trustee would certainly like to estop creditors at this time from later questioning the agreement she has reached, her attempt was procedurally deficient. To understand why, it is best to describe Rule 9019(a) as a two-step process, with the first step being the initial notice of the settlement itself and the second step being an actual hearing to consider the merits if an objection is in fact made. There is no reason for the trustee to set forth in detail in the initial motion all of the proofs that he might offer at the substantive hearing in the event an objection is raised. However, the initial motion must still contain enough information for the reviewing party to decide whether further inquiry is needed. At a minimum, then, a trustee's Rule 9019(a) motion should describe both the issue that is in dispute and the material aspects of the settlement reached. In addition, the motion should include for comparison some estimate as to what the estate could expect as the outcome if no settlement was reached and the matter went to trial instead. Finally, if not obvious from the comparison itself, the motion should also offer an explanation as to why the trustee believes settling as contemplated is prefer-

able to proceeding further.[26]

Attorneys routinely provide this same information whenever they meet with their clients to recommend a settlement. Clients invariably want to know what is being proposed and what are the prospects if settlement is refused. It is difficult to believe that creditors would expect anything less when a trustee asks of them in a Rule 9019(a) motion to in effect "speak now or forever hold your peace" regarding his contemplated settlement of a dispute.

There is, of course, a difference, for attorney-client conversations are privileged whereas disclosure under Rule 9019(a) is public. Indeed, Trustee complains here that the defendant in the Illinois litigation will gain an unfair advantage in future negotiations if she is required to include in the motion her assessment of the estate's prospects. That may be so. On the other hand, Trustee is under no obligation to share her assessment given that Rule 9019(a) is discretionary, not mandatory. If Trustee is truly concerned about disclosure, then she should withdraw her Rule 9019(a) motion and rely instead upon her own experience as to whether the settlement passes muster or not. Indeed, Trustee is protected by the so-called "business judgment rule" even without a Rule 9019(a) order. That rule, which is better described as a rebuttable presumption, protects a disinterested trustee from criticism concerning any decision made provided that it falls within the range of what an informed businessman would have rationally decided under the circumstances. *Dalen*, 259 B.R. at 604. *See also, Weaver*, 680 F.2d at 461–62 (the Sixth Circuit holding that "[t]he measure of care, diligence and skill required of a trustee is that of an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view.").[27]

The settlement Trustee proposes was also substantively deficient, for it contemplates control of the lawsuit being shifted from the estate to Debtors without an apparent conveyance of the lawsuit itself. While the agreement Trustee has reached acknowledges Debtors' exception of a 60% interest in any net recovery, the estate's retention of the other 40% interest means that control of the lawsuit itself remains with the estate. Consequently, Trustee is

---

**26.** Although important, initial disclosure to creditors regarding the lawfulness of what is proposed and the disinterestedness of the trustee in the decision made is not as crucial. First, disinterestedness is seldom an issue in a bankruptcy case other than when it is the debtor-in-possession who is proposing the settlement, for a trustee's appointment is dependent upon his being disinterested in all matters. 11 U.S.C. § 701(a)(1). *See also, Dalen*, 259 B.R. at 613. As for the legality of the proposed agreement, the court's own duty to protect the integrity of the judicial system ensures review of this issue. Moreover, the court is often better situated than creditors to make this assessment.

**27.** On the other hand, the business judgment rule does not shield a trustee from forgoing disclosure altogether when he does choose to seek Rule 9019(a) approval. The presumption, after all, is rebuttable. Consequently, a trustee must still include within his Rule 9019(a) motion some idea as to what the estate might expect to recover if the settlement were not accepted. While a $2,000 settlement may seem eminently reasonable under any lens when the amount in dispute is only $4,000, it is likely that a creditor would want to further scrutinize the same settlement notwithstanding the presumption if the amount in dispute was instead $400,000.

In fairness to Trustee, she did attempt to correct her failure to include the comparative information in her original motion by providing in her subsequent motion to reconsider estimates of the anticipated recovery on the lawsuit. Unfortunately, Trustee chose not to serve the second motion upon the creditor matrix. Consequently, the second motion did not remedy the deficiencies of the first

in effect requesting the court to sanction the Trustee's unlawful delegation of her statutory duty under Section 704 to administer this asset for the benefit of the estate. If Trustee in fact desires Debtors to assume control of the lawsuit, then Trustee must actually convey to Debtors the bankruptcy estate's remaining interest in the same under authority of Section 363(b).

### D. *Miller v. Chapman Contracting.*

Trustee argues that "approving the proposed settlement will provide an assurance that the Debtors remain the correct 'party in interest' for purposes of pursuing the Claim" ¶ 8, Motion to Reconsider. Trustee then cites *Miller v. Chapman Contracting*, 477 Mich. 102, 730 N.W.2d 462(2007). The debtor in *Miller*, like Debtors here, had been injured before filing for Chapter 7 relief. A lawsuit was then commenced post-petition. Unfortunately, the lawsuit named the debtor, not the bankruptcy estate, as the plaintiff. The defendant responded by moving to dismiss the debtor because he was the wrong party. In addition, the defendant contended that the estate itself was barred by the statute of limitations from then commencing its own action. Consequently, the only alternative the Chapter 7 trustee had left was to attempt to correct the error through amending the original complaint. What the Chapter 7 trustee argued was that he was permitted under either MCR 2.118(D) [28] or the judicial doctrine of misnomer to substitute the bankruptcy estate for the debtor as the proper party plaintiff without running afoul of the statute of limitations.

The Michigan Supreme Court rejected his argument Consequently, *Miller* is of considerable concern to both bankruptcy trustees and debtors. However, *Miller's* applicability in the instant case is questionable given that Debtors' accident occurred in Illinois, not Michigan. Moreover, Rule 9019(a) approval does not "solve" *Miller* even if it were to apply. What is clear from the record is that Debtors in this instance had a tort claim when they commenced their case and that claim became property of the estate by operation of Section 541. Consequently, it is Trustee who currently has the ability to commence the lawsuit Of course, Trustee could return control of the lawsuit to Debtors by assigning the cause of action back to them. Such an assignment, though, can only be accomplished through Section 363(b). Indeed, for Trustee to rely upon the Rule 9019(a) order she is requesting instead of a Section 363(b) order as the basis for re-establishing Debtors' authority to proceed with the Illinois litigation would be misleading.

### *CONCLUSION*

For the reasons stated, Trustee's October 12, 2007 motion to reconsider is denied. The court will prepare a separate order consistent with this opinion.

---

28. **(D) Relation Back of Amendments.** An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

MCR 2.118(D) (emphasis in original).