IN RE: BIG APPLE VOLKSWAGEN, LLC

Julian Salim, Appellant,

v.

Alan Nisselson, Appellee.

Case No. 11–11388 (JLG)
No. 16–CV–5824 (RA)

United States District Court,
S.D. New York.

Signed 07/27/2017

Karamvir Dahiya, Dahiya Law Group LLC, New York, NY, for Appellant.

Howard L. Simon, Windels, Marx, Lane and Mittendorf LLP, New York, NY, for Appellee.

## OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Appellant Julian Salim appeals the bankruptcy court's dismissal of his adversary proceeding against Appellee Alan Nisselson, Chapter 7 Trustee of Debtor Big Apple Volkswagen, LLC. For the reasons set forth below, the bankruptcy court's decision is affirmed.

## BACKGROUND [1]

Salim is the former owner and operator of Big Apple Volkswagen, LLC ("Big Apple"), a Volkswagen dealership in the Bronx. On March 21, 2011, one of Big Apple's secured creditors, VW Credit, Inc., filed an action to recover Big Apple's inventory as collateral, claiming that Big Apple had defaulted on its loan. *See* Complaint, *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11–CV–1950 (LGS), 2011 WL 12524297 (S.D.N.Y. Mar. 21, 2011).

On March 30, 2011, Big Apple filed a voluntary Chapter 11 bankruptcy petition. *See* Bankr. Dkt. 1. On May 11, 2011, the bankruptcy court appointed Appellee Alan Nisselson (the "Trustee") as trustee of the

1. Unless otherwise noted, these facts are drawn from Salim's complaint, *see* App. at 24–33 ("Compl.") (Dkt. 10), and are assumed to be true for purposes of this opinion, *see* *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

Chapter 11 case. *See* Bankr. Dkt. 61.[2] Salim alleges that, at a meeting one or two days after the Trustee was appointed, he informed the Trustee of various transactions he had made, including payments "to Syria to purchase used vehicles" and to his "mother for her mortgage loan." Compl. ¶ 5. In response, Salim claims, the Trustee told him, "I know nothing about the dealership business, so get me a buyer and you have my word on not suing anyone." *Id.* Salim alleges that he and the Trustee "shook hands" on this deal. *Id.* ¶ 6. Salim claims that he confirmed a buyer for the dealership two days later. *Id.* ¶ 7.

On June 14, 2011, the Trustee filed an adversary action against Salim's parents, Ratiba Salim and Wahid Saleem, to recover assets Big Apple allegedly transferred to them prior to bankruptcy. *See* App. 34–47. The Trustee alleged that on March 14, 2011—approximately two weeks before the Chapter 11 petition was filed—Salim withdrew $718,000 from Big Apple's checking account and transferred these funds to his mother. *See* App. 36–37. According to the Trustee's complaint, Salim's mother used these funds to satisfy a $300,000 mortgage on her residence, then transferred title of the residence to Salim's father. *See* App. 37. The Trustee further alleged that on March 15, 2011—the day after the alleged transfer to Salim's mother—Salim withdrew another $504,271.14 from Big Apple's checking account and transferred it to his brother-in-law in Syria. *See* App. 37. The Trustee asserted claims for avoidance and recovery of preferential and fraudulent transfers and attachment of property. *See*

App. 38–44. The Trustee's action against Salim's parents remains pending.[3]

On November 24, 2015, Salim initiated this adversary proceeding against the Trustee. *See* Compl. Salim claims that it was a "shock" when the Trustee "went back on his word after promising [Salim] that he wouldn't sue" his parents. Compl. ¶ 10. Salim further alleges that he continues to "suffer from nightmares from all [the Trustee's] wrong doings," and that the Trustee cost him his marriage and "ruined [his] life just for greed." *Id.* ¶ 15. The complaint asserts claims for breach of fiduciary duty and breach of contract and seeks to enjoin the Trustee from suing Salim's parents. *Id.* ¶¶ 22–29. On December 22, 2015, the Trustee moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012. *See* App. 48. According to the bankruptcy court, Salim withdrew his claim for breach of fiduciary duty and waived all claims for money damages at a hearing on April 21, 2016. *See* App. 4, 8–9.[4]

On May 19, 2016, the bankruptcy court granted the Trustee's motion to dismiss. *See* App. 2–23. The bankruptcy court determined that Salim lacked standing because he had not sufficiently alleged that he suffered an injury in fact, explaining that "[t]o the extent the Complaint pleads an injury to [Salim] at all, it does in the most conclusory manner." App. 18. The bankruptcy court also concluded that Salim lacked standing to sue on behalf of his parents because "the Complaint is devoid of allegations establishing [Salim's] right to act on behalf of his parents." App. 19.

2. Salim's Chapter 11 case was converted to a Chapter 7 case on December 21, 2011. *See* Order (Bankr. Dkt. 147).

3. The bankruptcy court granted the Trustee summary judgment in the action against Salim's parents, but this judgment was vacated by Judge Gardephe. *See* Order, *Salim v. Nis-*

*selson*, No. 15–CV–4629 (PGG) (S.D.N.Y. July 8, 2015).

4. While it does not appear that a transcript of the April 21, 2016 hearing was included in the record, Salim does not dispute the bankruptcy court's description of the hearing.

Despite concluding that Salim lacked standing, the bankruptcy court also addressed the merits of the Trustee's motion. *See* App. 10–17. The bankruptcy court determined that Salim had not stated a claim for·breach of contract because his alleged agreement with the Trustee was unenforceable, as would be any agreement not approved by the bankruptcy court under Federal Rule of Bankruptcy Procedure 9019(a). *See* App. 12–17. The bankruptcy court also dismissed Salim's claim for an injunction because there is no independent cause of action for injunctive relief under New York law. *See* App. 21–22. Finally, the bankruptcy court denied Salim leave to amend, reasoning that any amendment would be futile. *See* App. 22–23. On May 31, 2016, the bankruptcy court entered an order dismissing the complaint with prejudice. *See* Bankr. No. 15–AP–1408 (JLG), Dkt. 21.

On July 21, 2016, Salim filed a notice of appeal. *See* Notice of Appeal (Dkt. 1). On March 16, 2017, Salim filed an opening brief. *See* Appellant's Opening Br. (Dkt. 9). On May 9, 2017, the Trustee filed an answering brief. *See* Appellee's Br. (Dkt. 14). On May 23, 2017, Salim filed a reply. *See* Appellant's Reply Br. (Dkt. 16).[5]

## LEGAL STANDARDS

### A. Standard of Review

District courts have appellate jurisdiction over "final judgments, orders and decrees" of bankruptcy courts under 28 U.S.C. § 158(a)(1). "A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclu-

sions *de novo.*" *Davidson v. AMR Corp. (In re AMR Corp.),* 566 B.R. 657, 663 (S.D.N.Y. 2017) (citation omitted). "A finding of fact is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Adler v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.),* 855 F.3d 459, 469 (2d Cir. 2017) (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). By contrast, "[h]armless error, meaning an error not inconsistent with substantial justice or that does not affect the parties' substantial rights, is not grounds for reversal." *McNerney v. ResCap Borrower Claims Tr. (In re Residential Capital, LLC),* 563 B.R. 477, 485 (S.D.N.Y. 2016). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Margulies v. Hough (In re Margulies),* 566 B.R. 318, 328 (S.D.N.Y. 2017) (internal quotation marks omitted).

### B. Motion to Dismiss

"Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated into bankruptcy procedural rules by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure." *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.),* 421 B.R. 626, 638 (Bankr. S.D.N.Y. 2009); *see* Fed. R. Bankr. P. 7012(b); *see also Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp. plc),* 93 F.3d 1036, 1043 (2d Cir. 1996). To survive a motion to dismiss under Rule 12(b)(6), a

---

5. Salim did not timely file a brief and appendix as required by Federal Rule of Bankruptcy Procedure 8018. On March 9, 2017, the Court ordered Salim to show cause why this appeal should not be dismissed under Bankruptcy Rule 8018(a)(4). *See* Order to Show Cause (Dkt. 7). Salim responded by submit-

ting a brief one week later, *see* Dkt. 9, and the Trustee requested that the Court dismiss the appeal, *see* Dkt. 12. On April 10, 2017, the Court denied the Trustee's request to dismiss the appeal and set a briefing schedule. *See* Order (Dkt. 13).

complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability; it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). When considering a Rule 12(b)(6) motion, courts "accept[ ] plaintiffs' plausible allegations as true and draw[ ] all reasonable inferences in their favor." *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

## DISCUSSION

### A. Standing

The bankruptcy court determined that Salim lacks standing to pursue his claims against the Trustee. *See* App. 18–20. The Court disagrees.

■■■ "To satisfy the Constitution's restriction of [a federal court's] jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing." *Bank of Am. Corp. v. City of Miami*, —— U.S. ——, 137 S.Ct. 1296, 1302, 197 L.Ed.2d 678 (2017). "To establish Article III standing, the plaintiff seeking compensatory relief must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Town of Chester v. Laroe Estates, Inc.*, —— U.S. ——, 137 S.Ct. 1645, 1650, 198 L.Ed.2d 64 (2017) (quoting *Spokeo,*

*Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)). "These limitations apply to bankruptcy courts." *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 168 (2d Cir. 2016), *cert. denied sub nom. Gen. Motors LLC v. Elliott*, —— U.S. ——, 137 S.Ct. 1813, 197 L.Ed.2d 758 (2017). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S.Ct. at 1547; *accord Montesa v. Schwartz*, 836 F.3d 176, 194 (2d Cir. 2016). "Each element of standing 'must be supported ... with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■■■ This case primarily concerns injury in fact—the "'first and foremost' of standing's three elements." *Spokeo*, 136 S.Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130); *accord Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130). "To be 'concrete,' an injury 'must actually exist,' that is, it must be 'real, and not abstract.'" *Strubel*, 842 F.3d at 188 (internal citation omitted) (quoting *Spokeo*, 136 S.Ct. at 1548). "'Concrete' is

not, however, necessarily synonymous with 'tangible,'" and the Supreme Court has confirmed "in many of [its] previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 S.Ct. at 1548.[6] The Second Circuit has "repeatedly described [the injury-in-fact] requirement as a low threshold, which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *John*, 858 F.3d at 736 (internal citations and quotation marks omitted).

 Contrary to the bankruptcy court's conclusion, Salim's allegations are sufficient to satisfy the injury-in-fact requirement. Salim alleges that "[t]ill this day [he] suffer[s] from nightmares" from the Trustee's alleged breach of their agreement, and that the Trustee cost him his marriage. Compl. ¶ 15. This injury is "concrete," in that it is " 'real,' and not 'abstract.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Webster's Third New International Dictionary* 472 (1971) and *Random House Dictionary of the English Language* 305 (1967)). To be sure, this injury is "intangible," but as the Supreme Court recently clarified, "intangible injuries can nevertheless be concrete." *Id.* at 1549. In the context of intangible injuries, *Spokeo* instructs courts to consider, among other things, "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as

providing a basis for a lawsuit in English or American courts." *Id.* As a general matter, there can be little doubt that emotional harm has long been regarded as a harm providing a basis for a lawsuit in English and American courts. Indeed, English courts have recognized emotional distress as a cognizable harm under tort law since the late nineteenth century, *see, e.g., Wilkinson v. Downton*, (1897) 2 Q.B. 57, 58–60, and American courts have entertained similar suits since the mid-twentieth century, *see, e.g., State Rubbish Collectors Ass'n v. Siliznoff*, 38 Cal.2d 330, 240 P.2d 282, 284–85 (1952). *See generally* John J. Kircher, *The Four Faces of Tort Law: Liability for Emotional Harm*, 90 Marq. L. Rev. 789 (2007) (discussing the history of emotional harm as a basis for liability in English and American court systems).[7] Today, every state permits recovery on the basis of emotional distress under at least some circumstances, *see id.* at 806, and emotional distress is a compensable injury under a variety of federal laws, *see, e.g., Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (hostile work environment claim under Title VII of the Civil Rights Act of 1964); *Mathie v. Fries*, 121 F.3d 808, 813–14 (2d Cir. 1997) (constitutional claim under 42 U.S.C. § 1983). In general, therefore, emotional distress plainly constitutes a concrete injury for purposes of Article III standing.

6. *But see Hollingsworth v. Perry*, —— U.S. ——, 133 S.Ct. 2652, 2661, 186 L.Ed.2d 768 (2013) ("[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm."). While *Spokeo's* articulation of the standing requirements may appear to differ from that in some the Court's prior cases, "[l]ower-court cases have read *Spokeo* to reiterate, not rework, principles of standing." *Gambles v. Sterling Infosystems, Inc.*, 234 F.Supp.3d 510, 521 n. 14, 2017 WL 589130, at *7 n.14 (S.D.N.Y. 2017) (collecting cases).

7. In the United States, several prominent scholars began identifying emotional distress as a cognizable injury under tort law in the 1930s. *See, e.g.,* William L. Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich. L. Rev. 874 (1939); Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033 (1936). In 1965, the Second Restatement of Torts recognized intentional infliction of emotional distress as a cause of action under certain circumstances. *See* Restatement (Second) of Torts § 46 (1965).

█ Moreover, the specific forms of emotional distress Salim alleges here are routinely recognized as legitimate bases for recovery in a variety of civil actions. For example, courts often recognize a plaintiff's "nightmares" as a compensable injury in actions claiming emotional distress. *See, e.g., Bender v. City of New York*, 78 F.3d 787, 792–93 (2d Cir. 1996) (determining that a plaintiff was entitled to at least $150,000 in compensatory damages under New York law for emotional distress, which "was manifested by nightmares and occasional loss of sleep over a period lasting a year and a half"); *Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590, 591–93 (1975) (determining that a plaintiff was "entitled to recover for the emotional harm," "recurrent nightmares ... difficulty in concentrating, irritability, inability to function at work properly, general tenseness and anxiety" (alterations omitted)). Marital problems, such as those Salim alleges here, are also recognized as a basis for damages in cases of emotional distress. *See, e.g., Petramale v. Local No. 17 of Laborers' Int'l Union of N. Am.*, 847 F.2d 1009, 1013 (2d Cir. 1988) (determining that a plaintiff was entitled to compensatory damages for "emotional distress, marital problems, and injured reputation"). Thus, the emotional distress alleged by Salim in this case, though intangible, constitutes "a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549.[8]

Salim's alleged injury is also "particularized," in that it affects him "in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130). Salim alleges that he personally experienced "shock" when the Trustee sued his parents, that he personally suffers from "nightmares," and that his own marriage has been harmed as a result of the Trustee's breach of his contract. Compl. ¶¶ 10, 15. To be sure, these allegations involve other people—namely, Salim's parents—but the emotional distress is Salim's own, as is the agreement the Trustee allegedly breached. Independent of the harm that his parents have experienced, it is Salim's own "nightmares," "shock," and marital problems—all suffered when the Trustee allegedly breached its agreement with Salim—that serve as the basis for this lawsuit. *Id.* ¶¶ 10, 15. As a result, Salim has alleged a "distinct" injury, *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), not an "undifferentiated" one that could be asserted by a large number of people, *United States v. Richardson*, 418 U.S. 166, 177, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). Accordingly, Salim has satisfied the "particularization" requirement of the injury-in-fact inquiry.

Finally, Salim has adequately alleged that his injury is "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). Indeed, Salim alleges that he suffers from nightmares "[t]ill this day," and that his marriage has already been affected by the Trustee's actions.

---

**8.** It is true that, under New York law, "[t]he general rule in contract cases is that 'absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty.'" *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 478 N.Y.S.2d 838, 467 N.E.2d 502, 504 (1984) (quoting *Wehringer v. Standard Sec. Life Ins. Co. of N.Y.*, 57 N.Y.2d 757, 454 N.Y.S.2d 984, 440 N.E.2d 1331, 1332 (1982)). Whether Salim could recover damages for emotional distress in a breach-of-contract action, however, is a question that goes to the merits of his claim, rather than his standing to assert it. *See, e.g., Trikas v. Universal Card Servs. Corp.*, 351 F.Supp.2d 37, 46 (E.D.N.Y. 2005).

Compl. ¶ 15. Thus, rather than alleging a "some day" injury, *Lujan,* 504 U.S. at 564, 112 S.Ct. 2130, Salim seeks relief for an injury that he has already suffered and that continues to affect his life. Accordingly, Salim has demonstrated that his injury is "actual or imminent."

Salim has satisfied the remaining two elements of Article III standing. His injury is "fairly traceable" to the Trustee's actions. Indeed, Salim alleges that he "suffer[s] from nightmares from all [the Trustee's] wrongdoings." Compl. ¶ 15. While Salim's complaint also suggests that his distress stems from the loss of his dealership and his own financial difficulties, it plainly alleges that the Trustee's breach of his agreement is at least one reason why he has suffered emotional harm. Salim has also alleged that his injury is "redressible": he seeks damages, which are commonly awarded to plaintiffs who suffer emotional distress. Therefore, Salim has satisfied the requirements of Article III standing.

 In addition to finding that Salim did not allege that he had suffered an injury in fact, the bankruptcy court determined that Salim lacked standing under the doctrine of third-party standing. *See* App. 19. It is true, as the bankruptcy court noted, that a plaintiff generally may not establish standing on the basis of injuries to third parties, unless the plaintiff additionally demonstrates "a close relation to the injured third party and a hindrance to that party's ability to protect its own interests." *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 174 (2d Cir. 2005). Here, however, Salim is not suing on his parents' behalf; instead, he seeks to assert his rights under a contract he allegedly formed with the Trustee. And while Salim's parents may have been beneficiaries of this alleged agreement, insofar as it purported to shield them from suit, Salim

brings this action as the contract's principal. Moreover, Salim seeks to recover damages for his own injuries, not for any injuries his parents may have sustained. *See, e.g., Leibovitz,* 252 F.3d at 188 (holding that a plaintiff's psychological distress was "not vicarious" in a hostile work environment case, where "*she* experienced [her workplace] as hostile by reason of the alleged harassment of other women out of her presence"). Accordingly, the doctrine of third-party standing does not undermine the Court's conclusion that Salim has standing to bring this case.

In sum, the Court concludes that the bankruptcy court erred in finding that Salim lacks standing. If Salim lacked standing, the Court would not have jurisdiction to reach the merits of the parties' dispute. *See Steel Co.,* 523 U.S. at 94, 118 S.Ct. 1003. Since it concludes that Salim does have standing to pursue his claims, however, the Court may now consider the bankruptcy court's determination that Salim failed to state a claim. *See, e.g., Gingery v. City of Glendale,* 831 F.3d 1222, 1228 (9th Cir. 2016) (holding that, although that the district court erred in finding that plaintiffs lacked standing, the appellate court may nonetheless "proceed to consider the district court's determination that Plaintiffs failed to state a claim upon which relief may be granted"), *cert. denied sub nom. Mera v. City of Glendale,* —— U.S. ——, 137 S.Ct. 1377, 197 L.Ed.2d 555 (2017); *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1031 (D.C. Cir. 2003) (disagreeing with the district court's finding that plaintiff lacked standing but proceeding to the merits of the dispute).

**B. Failure to State a Claim**

The bankruptcy court concluded that Salim had failed to state a claim for breach of contract because it had not approved his

alleged agreement with the Trustee under Federal Rule of Bankruptcy Procedure 9019(a). The Court agrees.

 "Compromises are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017). "Before pre-plan settlements can take effect, however, they must be approved by the bankruptcy court pursuant to Bankruptcy Rule 9019." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC )*, 478 F.3d 452, 455 (2d Cir. 2007). Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Here, the Trustee allegedly gathered information regarding transfers of the dealership's funds to Salim's family members, then offered his "word on not suing anyone" if Salim secured a buyer for the dealership. Compl. ¶ 5. This agreement, if made, constitutes a compromise of claims related to transfers of the dealership's funds. *See* App. at 38–44. Compromises of this nature are routinely presented to bankruptcy courts for approval. *See, e.g., Doyaga v. Roth (In re Handler )*, 386 B.R. 411, 422–24 (Bankr. E.D.N.Y. 2007) (approving Chapter 7 trustee's proposed settlement of fraudulent transfer avoidance claims under Rule 9019(a)). Here, however, there is no dispute that the bankruptcy court did not approve Salim's agreement with the Trustee. Therefore, the alleged agreement did not "take effect," *In re Iridium Operating LLC*, 478 F.3d at 455, and Salim cannot maintain a contract claim based on its breach.

Salim argues, however, that a compromise or settlement may be enforceable without court approval under Rule 9019(a). *See* Appellant's Reply Br. at 2. The Second Circuit appears to have disagreed, though it may not have squarely addressed the argument Salim raises here. *See In re Iridium Operating LLC*, 478 F.3d at 455; *cf. Flanagan v. Mangan (In re Flanagan )*, 503 F.3d 171, 179 (2d Cir. 2007) (citing with approval a treatise's statement that any "settlement must be approved by the court" (quoting 10 *Collier on Bankruptcy* ¶ 9019.01)). Outside the Second Circuit, the overwhelming majority of courts to interpret Rule 9019(a) have determined that a compromise or settlement is enforceable only if it has been approved by the bankruptcy court. *See, e.g., Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010) ("It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective.") (citing Fed. R. Bankr. P. 9019(a)); *Travelers Ins. Co. v. Am. AgCredit Corp. (In re Blehm Land & Cattle Co.)*, 859 F.2d 137, 141 (10th Cir. 1988) (per curiam) ("Under Bankruptcy Rule 9019, a settlement or compromise agreement between the trustee and a party must be approved by the court, after notice and hearing, to be enforceable."); *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988) ("In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable.").[9] However, as Salim correctly

---

9. *See also, e.g., Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 539 n.3, 2017 WL 2656128, at *3 n.3 (E.D.N.Y. 2017); *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 392 (M.D. Fla. 2008); *Columbia Gulf Transmis-sion Co. v. La. Nat. Gas Pipeline, Inc.*, No. 93-CV-239, 1994 WL 693361, at *3 (E.D. La. Dec. 9, 1994); *Rafool v. Goldfarb Corp. (In re Fleming Packaging Corp.)*, No. 03-AP-82408, 2008 WL 682428, at *2 (Bankr. C.D. Ill. Mar. 7, 2008) ("The majority of courts interpret

notes, at least some bankruptcy courts have reached the opposite conclusion. *See, e.g.*, *In re Novak*, 383 B.R. 660, 667–70 (Bankr. W.D. Mich. 2008); *In re Dalen*, 259 B.R. 586, 599 & n.18 (Bankr. W.D. Mich. 2001) ("Congress · intended the settlement approval process referenced in the Bankruptcy Rules to be discretionary, not mandatory." (footnote omitted)); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 551–52 (Bankr. N.D. Ill. 1994) ("[T]he Bankruptcy Code contains no requirement for judicial approval of settlements.").[10] This apparent disagreement has led some courts to observe that "[c]ourts are split on whether the language of Rule 9019 by itself can require both a motion and judicial approval as preconditions to settlement." *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 366 n.6 (E.D.N.Y. 2001).[11]

 To the extent that there is any uncertainty regarding the scope of Rule 9019(a), the Court agrees with the majority view that a compromise or settlement is enforceable only if the bankruptcy court has approved it. "As in any case of statuto-

ry construction," the Court begins "with the language of the statute." *Chai v. Comm'r of Internal Revenue*, 851 F.3d 190, 217 (2d Cir. 2017) (internal quotation marks omitted). The Court's "inquiry into the meaning of the statute's text ceases when the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Matal v. Tam*, — U.S. —, 137 S.Ct. 1744, 1756, 198 L.Ed.2d 366 (2017). Again, Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The text of Rule 9019(a) thus addresses approval, not enforceability. That is, while the text of the Rule explains how a bankruptcy court may "approve" a compromise or settlement—"[o]n a motion by the trustee and after notice and a hearing"—it does not explicitly identify the conditions under which a compromise or settlement is enforceable. *Id.* It may be that Rule 9019(a) does not address the question of enforceability because the an-

---

Rule 9019(a) as requiring court approval for all compromises and settlements."); *Bramham v. Nev. First Thrift (In re Bramham )*, 38 B.R. 459, 465 (Bankr. D. Nev. 1984). Commentators likewise agree that a compromise or settlement is not enforceable without court approval. *See, e.g.*, 10 *Collier on Bankruptcy* ¶ 9019.01; 4 William L. Norton Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* § 68:18 (3d ed. 2017) ("Bankruptcy Rules and case law require court approval of settlements and establish standards for procedural and substantive fairness of settlements.") (citing Fed. R. Bankr. P. 9019(a)); Reynaldo Anaya Valencia, *The Sanctity of Settlements and the Significance of Court Approval: Discerning Clarity from Bankruptcy Rule 9019*, 78 Or. L. Rev. 425 (1999).

10. The Third Circuit has explicitly declined to consider the issue. *See Myers v. Martin (In re Martin )*, 91 F.3d 389, 395 (3d Cir. 1996) ("[W]e do not decide the broader issue of whether, absent intervention of a bankruptcy court, parties are bound by the terms of a

settlement pending final approval of the bankruptcy court.").

11. *See also, e.g.*, Linhadley Eljach, *No Seal No Deal: Amending Federal Rule of Bankruptcy Procedure 9019 to Require Judicial Approval of Settlement Agreements*, 32 Emory Bankr. Dev. J. 433, 437 & n.28 (2016) ("Courts disagree on whether Rule 9019(a) regarding judicial approval of compromise or settlement agreements is mandatory or permissive."); Ann K. Wooster, *Construction and Application of Federal Rule of Bankruptcy Procedure 9019(a), Concerning Judicial Approval of Compromise or Settlement in Bankruptcy Proceeding—Based on Paramount Interest of Creditors*, 35 A.L.R. Fed. 2d 209 § I.2 (2009) ("[A] split of authority has resulted as to whether Fed. R. Bankr. P. 9019's provisions relating to bankruptcy court approval of compromise or settlement agreements are mandatory or permissive, with the great weight of authority holding that these requirements are mandatory.").

swer was obvious to its drafters: the Rule establishes a process for court approval only because that approval is necessary for enforcement. *See Bond v. United States,* —— U.S. ——, 134 S.Ct. 2077, 2088, 189 L.Ed.2d 1 (2014) ("Part of a fair reading of statutory text is recognizing that 'Congress legislates against the backdrop' of certain unexpressed presumptions." (quoting *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991))). On the other hand, as Salim argues, the text of the Rule appears to leave open the possibility that a compromise or settlement not submitted for approval may nonetheless be enforceable. On the question of whether a settlement or compromise may be enforceable without court approval, therefore, the text of Rule 9019(a) is arguably ambiguous.[12]

■ Any ambiguity in the text of Rule 9019(a), however, is resolved by considering the Rule's context, history, and purpose. *See Chai,* 851 F.3d at 217 ("[I]f the meaning of the statute is ambiguous, [a court] may resort to canons of statutory interpretation to help resolve the ambiguity."). First, the context of Rule 9019(a) strongly suggests that any compromise or settlement must receive court approval to take effect. "One of the most basic interpretive canons is that a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 156 (2d Cir. 2013) (alterations omitted) (quoting *Corley v. United States,* 556 U.S. 303, 314, 129 S.Ct.

1558, 173 L.Ed.2d 443 (2009)). Here, the process outlined in Rule 9019(a) would be inoperative if approval were not mandatory. If approval were not necessary, why would a trustee seek it? Motions, notice, and hearings take time, and trustees would have little incentive to follow this process if approval were not required. The process of Rule 9019(a) also introduces risks: if disclosed, a compromise or settlement may be opposed by other creditors or rejected by the court. If Rule 9019(a) does not require the trustee to seek court approval of compromises or settlements, its procedures would be superfluous. Thus, reading Rule 9019(a) to give effect to all its provisions, the Court concludes that any compromise or settlement must be approved under the Rule to be deemed effective.

■ The history of Rule 9019(a) further supports this interpretation. "[W]hen a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the precursor in fathoming the new law." *Johnson v. United States,* 529 U.S. 694, 710, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). The predecessor to Rule 9019(a) is former Rule 919(a), which provided that "on application by the trustee or receiver and after hearing on notice to the creditors . . . and to such persons as the court may designate, the court may approve a compromise or settlement." Fed. R. Bankr. P. 919(a) (1982). The Advisory Committee notes to former Rule 919 stated that the rule was "an adaptation of § 27 of the [Bankruptcy] Act." *Id.* advisory committee's notes. Section 27, in turn, provided that "[t]he receiver or trustee may, with

---

12. Some courts have also determined that Rule 9019(a)'s use of the discretionary term "may" creates ambiguity. *See, e.g., In re Novak,* 383 B.R. at 667 ("[T]he use of 'may' in the rule as opposed to 'shall' creates ambiguity at the very least . . . ."). The Court is skeptical of this view. Read in context, the term "may" simply refers to the bankruptcy court's

discretion in deciding whether to approve an agreement—not to the parties' discretion in obtaining court approval of an agreement they seek to enforce. Nonetheless, for the reasons discussed above, the Court concludes that the text of Rule 9019(a) may be viewed as ambiguous.

approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." 11 U.S.C. § 50 (1976). In light of its relationship to Section 27, former Rule 919 was widely construed as mandatory: it conditioned the trustee's compromise or settlement on court approval. *See In re W. T. Grant Co.*, 4 B.R. 53, 69 (Bankr. S.D.N.Y. 1980) ("The authority of a trustee to compromise and settle controversies relating to the administration of a bankrupt estate is proscribed only by the *requirement* that the compromise be 'with the approval of the court.'" (emphasis added) (quoting 11 U.S.C. § 50 and citing former Bankruptcy Rule 919(a))); *see also, e.g., In re Lloyd, Carr & Co.*, 617 F.2d 882, 885 (1st Cir. 1980) (holding that an agreement was "not enforceable as a Section 27 compromise" because "the notice requirements of [Rule 919(a) ] were not met"). The Advisory Committee Notes to Rule 9019(a) specifically state that the Rule is "essentially the same as the provisions of former Bankruptcy Rule 919." Fed. R. Bankr. P. 9019(a) advisory committee's notes; *see also Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 283 n.3 (6th Cir. 1986) (noting that Rule 9019 and Rule 919 "are essentially identical"); *In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984) ("Settlements are considered by the bankruptcy courts under the procedures established by Rule 9019(a), substantially the same as Rule 919(a), its predecessor

applicable under the Bankruptcy Act."), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985); *In re Patel*, 43 B.R. 500, 504 (N.D. Ill. 1984) (noting that "former Rule 919 . . . is exactly the same as Rule 9019"). Thus, the history of Rule 9019(a), including the Rule's relationship to its predecessor, former Rule 919(a), strongly supports the conclusion that a compromise or settlement is not enforceable without court approval.[13]

Finally, the purpose of Rule 9019(a) strongly supports this interpretation. Of course, "we interpret statutes 'to give effect to congressional purpose.'" *United States v. Al Kassar*, 660 F.3d 108, 125 (2d Cir. 2011) (quoting *Johnson*, 529 U.S. at 710 n.10, 120 S.Ct. 1795); *see also McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 861, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) ("Examination of purpose is a staple of statutory interpretation . . . .") Here, "Bankruptcy Rule 9019 . . . has a 'clear purpose to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *In re Iridium Operating LLC*, 478 F.3d at 461 (alterations omitted) (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y.), *aff'd*, 149 B.R. 289 (E.D.N.Y. 1992)); *see also, e.g., In re Fleming Packaging Corp.*, No. 03-BK-82408, 2008 WL 682428, at *2 ("The main purpose of the rule is to give creditors notice of the settlement and an opportunity to object and to provide the

---

13. In addition, both Rule 9019 and Rule 919 reflect the longstanding principle of bankruptcy law—recognized by the Supreme Court before the modem Code was enacted—that "it is essential that every important determination in reorganization proceedings receive the informed, independent judgment of the bankruptcy court." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry )*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968);

*see In re Iridium Operating LLC*, 478 F.3d at 461–62 (applying Rule 9019(a) "based on the original framework announced in *TMT Trailer Ferry*"); *see also Olson v. Anderson (In re Anderson )*, 377 B.R. 865, 871–72 (6th Cir. BAP 2007) ("Although the *TMT Trailer Ferry* case was decided under the Bankruptcy Act, its principles have been broadly held applicable to settlements under the Bankruptcy Code." (internal quotation marks omitted)).

court an opportunity to review the agreement to ascertain whether it is in the best interests of the bankruptcy estate."). By requiring court approval following a hearing before any compromise or settlement may be enforced, Rule 9019(a) promotes this purpose: it guarantees transparency in the process of compromise or settlement and provides other creditors an opportunity to voice their concerns. While compromise is favored in bankruptcy, Rule 9019(a) operates as an important check on the process, ensuring that any compromise or settlement will be effective only after it is disclosed to other creditors and reviewed by the bankruptcy court. And if the Rule were not mandatory, as Salim argues, it would do little to "prevent the making of concealed agreements," for any compromise or settlement could be enforced without notice to other creditors or to the bankruptcy court. *In re Iridium Operating LLC*, 478 F.3d at 461. Thus, the well-established purpose of Rule 9019(a) further supports the conclusion that a settlement or compromise is only enforceable if it receives court approval.

■■■ To be sure, a minority of courts have concluded that Rule 9019(a) does not condition the enforceability of a settlement or compromise on court approval. *See, e.g.,* *In re Novak*, 383 B.R. at 667–7; *In re Dalen*, 259 B.R. at 599 & n.18; *In re Telesphere Commc'ns, Inc.*, 179 B.R. at 551–52. The Court does not, however, find their reasoning persuasive. These decisions generally emphasize that the modem Bankruptcy Code was intended "to remove the bankruptcy judge from general estate administration, giving that task to the newly created office of United States Trus-

tee." *In re Telesphere Commc'ns, Inc.*, 179 B.R. at 551; *see also In re Novak*, 383 B.R. at 664. Even if one purpose of the Code were to vest significant authority in the trustee, however, "[n]o legislation pursues its purposes at all costs." *Am. Exp. Co. v. Italian Colors Rest.*, —— U.S. ——, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–526, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam)). The Code may have envisioned a significant role for the trustee, but it plainly did not "remove" the bankruptcy court from the compromise or settlement process. After all, since Rule 9019(a) establishes the process by which a bankruptcy court may approve a compromise or settlement, there can be no dispute that Rule 9019(a) contemplates that the bankruptcy court will, in at least some cases, be involved in settlement. Moreover, Rule 9019(a) promotes the trustee's role by giving the trustee— not the debtor or any other party—the exclusive authority to seek approval of a compromise or settlement through a motion to the bankruptcy court. *See* Fed. R. Bankr. P. 9019(a). Thus, despite the decisions of some bankruptcy courts, consideration of Congress's purpose in creating the role of the trustee does not undermine the Court's conclusion that Rule 9019(a) requires the trustee to obtain court approval of any compromise or settlement before it may be enforced.[14]

In sum, the Court concludes that a compromise or settlement, such as the agreement Salim claims he reached with the Trustee, is not enforceable without court approval under Rule 9019(a). Salim does

---

**14.** Notably, several of the decisions embracing the view that Rule 9019(a) is not mandatory have been questioned or outright rejected by other courts. *See In re Anderson*, 377 B.R. at 872 ("Clearly, [*In re Dalen*] was in error."), *abrogated on other grounds by Schwab*

*v. Reilly*, 560 U.S. 770, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010); *In re Fleming Packaging Corp.*, No. 03-82408, 2008 WL 682428, at *2 (identifying *Telesphere* and *Dalen* as decisions at odds with the "majority of courts").

not allege that the bankruptcy court approved his agreement. Accordingly, this agreement is not enforceable, and Salim's breach of contract claim fails as a matter of law.[15]

## C. Leave to Amend

■ The bankruptcy court denied Salim's request for leave to amend his complaint. *See* App. 22–23. While Salim's briefs do not challenge this aspect of the bankruptcy court's decision, Salim's list of "Issues Presented" includes whether "the Bankruptcy Court abused its discretion by not permitting" Salim to amend his compliant. *See* Appellant's Br. at 2. The Court concludes that the bankruptcy court was within its discretion to deny leave to amend.

■ Federal Rule of Civil Procedure 15(a), made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7015, provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also* Fed. R. Bankr. P. 7015; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). However, a court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also In re Hellas Telecomms. (Luxembourg) II SCA*, 535 B.R. 543, 561 (Bankr. S.D.N.Y. 2015). "A proposed amendment is . . . deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

■ The bankruptcy court concluded that any amendment to Salim's complaint would be futile. *See* App. 23. The Court agrees. Salim cannot maintain a breach of contract claim because, as the parties do not dispute, his alleged agreement with the Trustee never received court approval. Salim has not argued that, if given an opportunity to re-plead, he could cure this fatal defect to his compliant. Accordingly, the bankruptcy court was within its discretion to deny Salim leave to amend. *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))).[16]

15. Salim also argues that the Trustee's alleged breach of the parties' agreement should be analyzed under the standard applied to a prosecutor's breach of a plea agreement in the criminal context. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Salim has provided no basis, however, for concluding that the constitutional standard applied in the context of criminal plea agreements has any applicability to a bankruptcy trustee's breach of an agreement not to sue. Accordingly, Salim's proposed analogy to criminal plea agreements is unavailing.

16. As discussed above, the Court concludes that Salim's complaint was properly dismissed for failure to state a claim, not for lack of standing. As the Second Circuit has repeatedly explained, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *John*, 858 F.3d at 735 (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)). Here, because the Court concludes that Salim does have stand-

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is affirmed. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

ing, it need not consider whether the bankruptcy court erred in denying Salim leave to amend after determining that he lacked standing.

